# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# JACKSON DIVISION

**THADDEUS L. JARVIS**                                      **PLAINTIFF**

**VS.**                                **CIVIL ACTION NO. 3:17cv210-CWR-LRA**

**WARDEN BRIAN WATSON, ET AL**                          **DEFENDANTS**

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Thaddeus L. Jarvis [hereinafter "Plaintiff" or "Jarvis"] filed his Complaint on March 28, 2017, and an omnibus hearing was conducted in his case on March 27, 2018. Thereafter, Defendants Kimyuana Jackson and Dr. Mohammed Zein filed a Motion for Summary Judgment [41], and a Report and Recommendation was entered by the undersigned recommending that their motion be granted [63]. By Order entered January 15, 2019, the Court adopted the Report and Recommendation and dismissed the claims against Defendants Jackson and Zein.

Plaintiff Jarvis filed a Motion for Partial Summary Judgment [47] and the remaining Defendants filed a Cross Motion for Summary Judgment [56], as well as a "Motion *in Limine* to Exclude Exhibit 1 to Plaintiff's Complaint from Evidence" [50]. All of these motions are before the undersigned United States Magistrate Judge for Report and Recommendation on the merits.

1

## JURISDICTION AND SUMMARY OF CLAIMS

Jurisdiction of this case is based upon 42 U.S.C. §1983. Plaintiff was housed as a pretrial detainee at the Madison County Detention Center [MCDC] in Madison, Mississippi, in November 2016, awaiting trial on charges of armed robbery, kidnapping, burglary to a dwelling, conspiracy to commit armed robbery, and being a habitual offender. He testified that he was from Louisiana and was not affiliated with any Mississippi inmates or gangs. He began having trouble with three inmates, Scott Laquintes, Henry Daniel and Timothy Humphrey, and feared for his safety. According to Plaintiff, on November 14, 2016, he wrote an Inmate Request Form requesting to be moved away from these inmates. He attached this form as an exhibit to the Complaint [1-1, pp. 1-3] as evidence that he notified Defendants of his fear. According to Jarvis, he mailed copies of this form to Defendant Warden Brian Watson and to the special response team, which included the named Defendants. Defendants never moved him, and, on December 4, 2016, he was assaulted by these three inmates. His front tooth was cracked in half; four teeth were chipped; he had a gash on the top of his head; and, his right eye was injured. He now has trouble with his peripheral vision in that eye.

Plaintiff charged that he did not receive appropriate care from the medical staff, including Defendant Head Nurse Kimyuana Jackson and Dr. Mohammed Zein. Those claims have been dismissed. He also contends that Defendants Warden Watson, Lt. Thomas Strait, Lt. Tamarrius A. Jones, Deputy Jeremiah Thornton, and Officer William

2

Irwin, all failed to protect him from the assault by the other inmates. The full transcript of Plaintiff's testimony is filed as ECF No. 41-1.

## SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The substantive law establishes those elements on which a plaintiff bears the burden of proof at trial; only facts relevant to those elements of proof are considered for summary judgment purposes. *Id*. at 322. There is a genuine factual dispute between the parties only "when a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 248 (1986).

## LEGAL ANALYSIS

The applicable facts and law in both Plaintiff's motion and Defendants' motion are inextricably intertwined and will be discussed jointly. In his Motion for Partial Summary

3

Judgment [47], Jarvis concludes that he is entitled to judgment because Defendants failed to protect him from serious injury at the hands of other inmates. He contends that there are no undisputed facts, and that Defendants have not denied the facts sworn to by him. He does not address Defendants' qualified immunity defenses in his motion. In their response and cross-motion, Defendants do not deny that Jarvis was assaulted by other prisoners on December 4, 2016, while housed in the Madison County Detention Center. However, they do deny that any of them received notice that Jarvis was in danger prior to the attack. They charge that Jarvis never filed his "Inmate Request Form" dated November 14, 2016, (attached as exhibit 1 to the Complaint), with any Defendant or other Madison County Detention Center official, nor did they receive this form via the mail. In fact, they surmise that Jarvis did not create the request form until after he was assaulted. Defendants filed a motion *in limine* to exclude Exhibit 1 to Plaintiff's Complaint from being used as evidence in this case [50], utilizing as support a transcript of a telephone conversation between Jarvis and his attorney Jacob Howard. In that conversation, attorney Howard advised Jarvis that defendants must have been made aware of a threat to him *prior* to the assault and then have purposely disregarded the threat before they could be liable for damages. [50, p. 2; 50-8]. In response, Jarvis objects to the use of the telephone conversation with his attorney for any purpose in this case [59].

Defendants deny they received any prior actual notice that Jarvis was in danger and they assert that Jarvis has no admissible evidence to dispute this. They conclude that they are protected from any liability through their defense of qualified immunity.

The doctrine of qualified immunity "shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 132 S.Ct. 2088, 2093 (2012). A right is "clearly established" if it emanates from precedent of the United States Supreme Court. *Taylor v. Barkes*, 135 S.Ct. 2042, 2044 (2015).

Defendants do not dispute that it is clearly established law that prison officials have a duty to protect a pretrial detainee from violence and injury at the hands of other inmates while confined. *Hare v. City of Corinth, MS*, 74 F.3d 633, 639 (5th Cir. 1996); *Bell v. Wolfish*, 441 U.S. 520, 536, n. 16 (1979); *Farmer v. Brennan,* 511 U.S. 825, 832-33 (1994). A convicted inmate's right comes from the Eighth Amendment, and a pretrial detainee's failure to protect claim arises under the Due Process Clause of the Fourteenth Amendment. *Longoria v. Texas*, 473 F.3d 586, 592 (5th Cir. 2006). But, as the Court in *Farmer* stated, "[n]ot every injury by one prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety." 511 U.S. at 834.

In this case, Jarvis alleges an "episodic act or omission" by these Defendants; accordingly, he must show that each of them acted with "deliberate indifference" to a

substantial risk of serious harm to him. *Hare*, 74 F.3d at 636 (citing *Farmer,* 511 at 828). For an official to act with deliberate indifference, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Wilson v. Seiter*, 501 U.S. 294 (1991). In the Fifth Circuit, a "subjective deliberate indifference" standard (as used in criminal law), is applied to all failure to protect claims, regardless of whether the plaintiff is a pretrial detainee or a prisoner. *Hare*, 74 F.3d at 643; *Alderson v. Concordia Par. Corr. Facility*, 848 F3d 415, 419-20 & n. 4 (5th Cir. 2017). Unless Jarvis can show that he did notify these Defendants that he was in danger, and at risk of being seriously harmed by the other inmates, his claims against them fail. Defendants must have known of the risk and then ignored it.

When a qualified immunity defense is raised at the summary judgment stage, the usual burden of proof is altered. *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). The plaintiff must then rebut the defense. *Id*. "[T]he court looks to the evidence before it (in the light most favorable to the plaintiff) when conducting the [test for qualified immunity]." *Miles v. Rich*, 576 F. App'x 394, 395 (5th Cir. 2014) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)). "[A] plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that

6

defeat a qualified immunity defense with equal specificity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

To find that the plaintiff has overcome the qualified immunity defense, "the court must highlight evidence that, if interpreted in the light most favorable to the plaintiffs, identifies conduct by the defendant that violated clearly established law." *Castillo v. City of Weslaco*, 369 F.3d 504, 506 (5th Cir. 2004). If the court denies the motion for summary judgment, it should outline "'the factual scenario it believes emerges from viewing the summary judgment evidence in the light most favorable" to the plaintiff' and 'highlight the evidence in the record supporting its conclusions.'" *Miles*, 576 F.App'x at 395 (quoting *Castillo*, 369 F.3d at 507).

Defendants' evidence includes Jarvis's official records from MCDC, along with an affidavit from Major Chuck McNeal regarding how inmates are classified when being processed into MCDC. [56-1 & 2]. The undersigned has also considered those Declarations filed by Defendants in support of their Motion *In Limine* [50]. If Defendants had no notice of any threat to Jarvis, then they are clearly entitled to qualified immunity. They have raised the defense, and Plaintiff must rebut their assertions that they had no notice.

Plaintiff's only proof that he notified these Defendants is his sworn testimony and his Exhibit 1, the Inmate Request Form dated November 14, 2016. Jarvis swears that he mailed the form to Defendants prior to the attack. According to Defendants, none of them

7

received this form and it was not filed with MCDC. By separate motion, they charge that the exhibit cannot be used as evidence and should be excluded because it is not admissible under Rule 901 of the Federal Rules of Evidence. It cannot be authenticated, according to Defendants, and thus cannot be used at trial or considered as competent evidence during summary judgment proceedings.

The undersigned is aware that the Court must view the facts in this case most favorably to the plaintiff, particularly when the plaintiff is *pro se*. Briefs by *pro se* litigants are afforded liberal construction...." *Johnson v. Quarterman*, 479 F.3d 358, 359 (5th Cir. 2007). Jarvis is the non-movant as to whether Defendants are protected by qualified immunity, and the law as discussed above requires that evidence must be interpreted in the light most favorable to the non-movant. Jarvis clearly testified that he wrote these Defendants about his fears on November 14, 2016. Part of his testimony when questioned by the undersigned is set forth below:

> THE COURT: All right. When did you tell the staff that you were having problems? And who did you tell?
>
> THE PLAINTIFF: It was on November 14th, 2016. I had sent a request to the warden and to the special response team. They handle everything dealing with the inmates there.
>
> THE COURT: You sent a written notice to them?
>
> THE PLAINTIFF: Yes. This right here. It is an inmate request form that I have a copy of. I sent all of them a copy and I kept my copy.
>
> THE COURT: All right. Who did you tell them was threatening you?

>THE PLAINTIFF: The warden and special response team.
>
>THE COURT: But who did you tell the warden you were afraid of?
>
>THE PLAINTIFF: The inmates that was threatening me.
>
>THE COURT: And you named those three.
>
>THE PLAINTIFF: I named them.
>
>THE COURT: Did you get any response? Was anything done?
>
>THE PLAINTIFF: No, ma'am. And I was jumped on on December 4, 2016.
>…. I think I wrote more than one request, and I think they think I was just agitated, because at the time, I was going through real serious legal litigations with Madison County and it was hard for me to focus on my legal work, you know, arguing with these guys every day. I wasn't ---I didn't feel safe where I was housed at.

[50-1, pp. 4-6].

>….
>
>THE COURT: All right, Mr. Jarvis, you named Defendant Brian Watson. Tell me what it is that Brian Watson did or did not do to violate your constitutional rights.
>
>THE PLAINTIFF: Well, Brian Watson, he is the warden. He is responsible for inmates to keep us safe. But the special response team, they handle everything dealing with inmates. How he violated my constitutional rights, because I wasn't there to be fighting with other inmates: I was there to be focused on my legal case. And I wrote him a request telling him I was having problems. I should have been moved for my safety. None of this would have happened if I would have been moved.
>
>THE COURT: You sent the notice directly to Watson?
>
>THE PLAINTIFF: Each request form has a specific check box for two

9

>    different sections, who you are sending it for and what you sending it for. So I
>    made sure that I sent one to Brian Watson and the special response team, and I
>    kept the copies.

[50-1, p 10.]

Plaintiff confirmed to the Court that he sent a copy of his request form, exhibit 1 to his complaint, to each member of the response team individually, to Defendants Watson, Strait, Jones, Thornton, and Irvin.

When questioned by defense counsel, Jarvis testified that he made five different copies of Exhibit 1 for each Defendant and put them inside a "special box that's on the yard." [50-1, p. 16.] He admitted that Exhibit 1 was not notarized. He also confirmed that he had filed many grievances (approximately 30) with the staff which are contained in his inmate file and were marked as received by a staff member. [50-1, pp. 16-19.] Yet this grievance (Exhibit 1) was not marked as filed or received.

Defendants contend that Exhibit 1 should not be considered because it would not be admissible at trial under Rule 901. They assert that it cannot be authenticated and the only way the document could be authenticated would be by Plaintiff submitting evidence sufficient "to support a finding that the matter in question is what its proponent claims." [50, p. 3]. And, that that could only be through a MCDC officer's sworn testimony that Jarvis submitted Exhibit 1 to that officer, and that the exhibit was placed in his MCDC file. *Id.* According to Defendants, Jarvis's testimony that he wrote Exhibit 1 is insufficient to authenticate the exhibit under Rule 901.

10

After the December 1, 2010, amendments to Rule 56, a party must use materials in support of its assertions that *could be presented* in a form that would be admissible in evidence at trial. *See, e.g.*, *Richardson v. Miss. Dept. of Hyman Services*, Civil Action No. 3:10cv198-DPJ-FKB, 2012 WL 568285 at *2-3 (S.D. Feb. 21, 2012). The evidence need not be authenticated at the summary judgment stage if the party can explain the admissible form that is anticipated for trial. *Id.*; Fed.R.Civ.Pro 56 ( c ) (2).

Under Fed. R. Evid. 901(a), evidence sufficient to support a finding that the matter in question is what its proponent claims satisfies the requirement of authentication or identification.[1] See 12A Fed.Proc., L.Ed. 33:513. The rule's examples of evidence that satisfies the requirement include testimony of a witness with knowledge, i.e., that an item is what it is claimed to be. Fed.R.Evid. 901(b)(1). Defendants appear to argue that Exhibit 1 cannot be admitted, or authenticated, without their own testimony that they received it, or by proof that it was received by MCDC.

The law does not require such evidence for simple authentication. Plaintiff's own testimony, as set forth above, may be sufficient to authenticate the document. He testified that he was the person who actually prepared the document. He also testified that he mailed it to these Defendants. That may or may not be true, and Defendants are certainly entitled to challenge his testimony. But, his testimony, that of a witness with knowledge, is that the Inmate Request Form is what he claims it to be.

11

Defendants are attempting to satisfy this factual dispute through the summary judgment procedure. However, the undersigned finds that at this stage Jarvis has submitted sufficient evidence to challenge Defendants' claim that they had no actual notice of his request for protection. He submits his Exhibit 1, but he also presents his sworn testimony that he gave notice of his fears. This evidence is sufficient to create a genuine issue of material fact, i.e., whether any Defendant had prior notice that Jarvis was in danger.

Defendants cite the cases of *Seabolt v. Champagne*, No. 05-C-1240, 2007 WL 2220206 (E.D. Wis. July 31, 2007) and *Davis v. Crawford*, No. 2:06CV1425, 2008 WL 11385400 (D. Nevada, March 26, 2008), in support of their motion *in limine*. [50, p. 4]. The undersigned finds the cases to be distinguishable and non- binding under the current facts before this Court.

The undersigned notes that both sides may present evidence on this issue at trial, to be resolved by a jury. Even if Defendants are found to have had notice of the threats, Plaintiff still must prove that they housed him under conditions which posed a substantial risk of serious harm and that they were deliberately indifferent to his need for protection. Plaintiff's burden of proof is substantial before any civil liability could be found as to each individual Defendant.

For these reasons, it is the opinion of the undersigned that:

1. Plaintiff's Motion for Partial Summary Judgment [47] should be **denied**.
2. Defendants' Cross Motion for Summary Judgment [56] should be **denied**.

3. Defendants' "Motion *in Limine* to Exclude Exhibit 1 to Plaintiff's Complaint from Evidence" [50] should be **denied without prejudice**.

4. This case should be set for trial.

Plaintiffs are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. 28 U.S.C. § 636; FED. R. CIV. P. 72(B); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Respectfully submitted, this the 9th day of July 2019.

S/ Linda R. Anderson<br>UNITED STATES MAGISTRATE JUDGE